```
                    UNITED STATES DISTRICT COURT
                    NORTHERN DISTRICT OF INDIANA
                         HAMMOND DIVISION
```

MARY DOWNEY, JAMES DOWNEY,      )
                                )
          Plaintiffs            )
                                )
     v.                         )    Case No. 2:03 cv 10
                                )
UNION PACIFIC RAILROAD,         )
                                )
          Defendant             )

## ORDER AND OPINION

This matter is before the court on the Motion for Summary Judgment filed by the defendant, Union Pacific Railroad, on September 29, 2005.  For the reasons set forth below, this motion is **GRANTED**.

## Background

Mary Downey, now known as Mary Chastain, was a "car blocker" for National Steel from 2000 through 2002.  (Mary Downey Dep. pp. 5, 50-51)  As a blocker, she would open each rail car that came into the warehouse at National Steel and perform any cleaning that was necessary to prepare the car to be loaded with steel coils. (Downey Dep. Pg. 14) She also assisted the "supply man" and inspected the bulkhead doors and railing to make sure welding seams or missing rail sections would not cause a problem with the bulkhead. (Downey Dep. p. 15; Dep. of Norman Foldenauer p. 13)

A bulkhead "is a moving wall . . . that runs on an upper track through a carriage assembly and . . . locks in place to secure the load anywhere in the car." (Steve Lauver Dep. pp. 28-29).  The bulkhead also has a bottom track which only is used to lock the bulkhead in place. (Lauver Dep. p. 48) Otherwise, the

bulkhead has approximately one to one and one-half inch clearance of the floor.  (Lauver Dep. p. 48) An aluminum bulkhead weighs between 750 and 1000 pounds. (Lauver Dep. Pg. 34)

In addition to a visual inspection with flashlights from the floor of the car, from which only the underside of the top bulkhead rail could be seen, Downey and the supply man would move the bulkhead doors in each car several feet to ensure that they moved properly.  (Downey Dep. p. 15, Foldenauer Dep. p. 22) Finally, Downey would lay and nail wood for the coils of steel that would be loaded into the car with a forklift. (Downey Dep. pp. 7, 15; Foldenauer Dep. p. 9)

On April 17, 2002, Downey was working with supply man Norm Foldenauer to prepare a boxcar owned by Union Pacific. (Foldenauer Dep. p. 5) According to Downey, Foldenauer was a "stickler" with inspections and would reject cars that had any problems. (Downey Dep. p. 20) Foldenauer recalled that the car in which Downey was injured was "in good shape" upon a visual inspection, in comparison to most cars. (Foldenauer Dep. p. 5) He and Downey tested the two aluminum bulkheads by moving them several feet and did not notice any defects. (Downey Dep. p. 22) However, Foldenauer did notice that the edges of the bulkhead sat the standard one to two inches off the floor but that the middle of the bulkhead was four or five inches off the floor. (Foldenauer Dep. p. 15) It is not clear from Foldenauer's deposition if he observed the uneven edge before or after Downey was injured. (Foldenauer Dep. pp. 14-15)

2

Following inspection, Downey and Foldenauer moved the bulkheads from the south end of the car to approximately 3/4 of the way towards the north so that the south end could be loaded with coils. (Downey Dep. pp. 24-25) The south end was loaded, and Downey and Fauldenauer secured the coils in place by nailing down wood and locking the south bulkhead. (Downey Dep. p. 28) Next, Downey and Foldenauer attempted to move the north bulkhead to the south so that the north end of the car could be loaded. (Downey Dep. p. 28) To accomplish this task, Downey was holding the side of the bulkhead and Foldenauer was in the middle of the bulkhead grasping a handhold. (Downey Dep. p.32) As they were pulling the bulkhead towards them, Downey's side of the bulkhead got caught on something and stopped moving. They pushed the bulkhead north again and attempted to pull south twice, but on the second attempt the door raised straight up, rode over the toe of Downey's shoe, and came down on Downey's right foot. (Downey Dep. pp. 29-30; Foldenauer Dep. p. 12) She now has no feeling in four toes. (Downey Dep. p. 49)

When Downey was injured, she and Foldenauer were attempting to free the bulkhead in the manner recommended by National Steel. (Downey Dep. p. 45) Following Downey's accident, National Steel directed employees to reject, rather than attempt to move, bulkheads that did not operate correctly in every way. (Foldenauer Dep. p. 18)

An accident report completed in connection to Downey's injury attributed the incident to "defective equipment (rail-

3

road)." (Pl. Exh. 2)  According to Union Pacific Manager of Technical Engineering Steven Lauver, Union Pacific does not perform a scheduled inspection or regular maintenance on the interior of its own boxcars. (Lauver Dep. pp. 17-18, 20) Rather, Union Pacific learns that maintenance is necessary on a car when it is "rejected" by an end user, a car inspector from the railroads, or from cleaning and preparation facilities. (Lauver Dep. Pg. 16) However, the Union Pacific car inspector  inspects only the exterior of the car for obvious defects, even when the car is unlocked. (Lauver Dep. pp. 20, 22-23)  The bulkheads are not inspected until there is an opportunity to get inside the car, such as at the National Steel warehouse. (Lauver Dep. Pg. 33)

Union Pacific does not ship railcars directly to National Steel.  According to Midwest Traffic Manager for National Steel, Paul Schwarten, National Steel worked with Indiana Harbor Belt ("IHB") Railroad to request cars from different railroads.  (Paul Schwarten Dep. p. 9) IHB would place the order for cars with Union Pacific, pick the cars up at a Union Pacific exchange point, and then pursuant to contract, use Norfolk Southern Railroad to push the cars into the National Steel warehouse. (Schwarten Dep. pp. 25-26)

## Discussion

Pursuant to Federal Rule of Civil Procedure 56(c), summary judgment is proper only if it is demonstrated that "there is no genuine issue as to any material fact and the moving party is entitled to a judgment as a matter of law." See ***Celotex Corp. v.***

4

*Catrett*, 477 U.S. 317, 322-23, 91 L.Ed.2d 265, 106 S.Ct. 2548 (1986); *Lawrence v. Kenosha County*, 391 F.3d 837, 841 (7th Cir. 2004); *Branham v. Snow*, 392 F.3d 896, 901 (7th Cir. 2004); *Windle v. City of Marion, Indiana*, 321 F.3d 658, 660-61 (7th Cir. 2003), *cert. denied*, 540 U.S. 873, 124 S.Ct. 873, 157 L.Ed.2d 133 (2003).  The burden is upon the moving party to establish that no material facts are in genuine dispute, and any doubt as to the existence of a genuine issue must be resolved against the moving party.  *Adickes v. S.H. Kress & Company*, 398 U.S. 144, 160, 90 S.Ct. 1598, 1610, 26 L.Ed.2d 142, 155 (1970); *Lawrence*, 391 F.3d at 841. A fact is material if it is outcome determinative under applicable law.  *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248, 106 S.Ct. 2505, 2510, 91 L.Ed.2d 202, 212 (1986); *Lawrence*, 391 F.3d at 841; *Hottenroth v. Village of Slinger*, 388 F.3d 1015, 1027 (7th Cir. 2004); *Palmer v. Marion County*, 327 F.3d 588, 592 (7th Cir. 2003).  Even if the facts are not in dispute, summary judgment is inappropriate when the information before the court reveals a good faith dispute as to inferences to be drawn from those facts.  *Spiegula v. Hull*, 371 F.3d 928, 935 (7th Cir. 2004); *Hines v. British Steel Corporation*, 907 F.2d 726, 728 (7th Cir. 1990).  Finally, summary judgment "will not be defeated simply because motive or intent are involved."  *Roger v. Yellow Freight Systems, Inc.*, 21 F.3d 146, 148 (7th Cir. 1994).  *See also Miller v. Borden, Inc.*, 168 F.3d 308, 312 (7th Cir. 1999); *Plair v. E.J. Brach & Sons, Inc.*, 105 F.3d 343, 346 (7th Cir.

5

1997); ***United Association of Black Landscapers v. City of Milwaukee***, 916 F.2d 1261, 1268 (7th Cir. 1990).

In deciding a motion for summary judgment, the trial court must determine whether the evidence presented by the party opposed to the summary judgment is such that a reasonable jury might find in favor of that party after a trial.

> The inquiry performed is the threshold inquiry of determining whether there is the need for a trial--whether, in other words, there are any genuine factual issues that properly can be resolved only by a finder of fact because they may reasonably be resolved in favor of either party.
>
> [T]his standard mirrors the standard for a directed verdict under Federal Rule of Civil Procedure 50(a), which is that the trial judge must direct a verdict if, under the governing law, there can be but one reasonable conclusion as to the verdict.
>
> ***Anderson v. Liberty Lobby, Inc.***, 477 U.S. 242, 250, 106 S.Ct. 2505, 2511, 91 L.Ed.2d 202, 212 (1986)

***See also, Reeves v. Sanderson Plumbing Prods., Inc***., 530 U.S. 133, 149-151, 120 S.Ct. 2097, 2109, 147 L.Ed.2d 105, 120-22 (2000) (setting out the standard for a directed verdict); ***Celotex Corp***., 477 U.S. at 322-323, 106 S.Ct. at 2553; ***Branham***, 392 F.3d at 901; ***Lawrence***, 391 F.3d at 841; ***Hottenroth***, 388 F.3d at 1027 (stating that a genuine issue is one on which "a reasonable fact finder could find for the nonmoving party"); ***Schuster v. Lucent Technologies, Inc***., 327 F.3d 569, 573 (7th Cir. 2003) (stating that a genuine issue exists and summary judgment is inappropriate

6

if there is sufficient evidence for a jury to return a verdict for the nonmoving party).

The plaintiffs allege that Union Pacific breached a duty to inspect the box car in which Downey was injured.  To prevail on a claim for negligence in Indiana, "a plaintiff is required to prove: (1) a duty owed by the defendant to the plaintiff; (2) a breach of that duty by the defendant; and (3) an injury to the plaintiff proximately caused by the breach." *Peters v. Forster*, 804 N.E.2d 736, 738 (Ind. 2004).  *See also Horine v. Homes by Dave Thompson, LLC*, 834 N.E.2d 680, 683 (Ind. App. 2005).  Duty is a question of law.  *See Peters*, 804 N.E.2d at 738; *Horine*, 834 N.E.2d at 683.  However, "'[a] negligence action is rarely an appropriate case for disposal by summary judgment' because 'issues of negligence, causation, and reasonable care are most appropriately left for a determination of the trier of fact.'" *Mayfield v. The Levy Company*, 833 N.E.2d 501, 505 (Ind. App. 2005) (*quoting Guy's Concrete, Inc. V. Crawford*, 793 N.E.2d 288, 293 (Ind. App. 2003), *trans. denied*, 804 N.E.2d 760 (Ind. 2003)).  *See also Horine,* 834 N.E.2d at 683.  Despite this admonition, the Indiana Supreme Court has stated that issues traditionally left to the jury such as foreseeability and proximate cause, may be resolved by the court in "plain and indisputable cases, where only a single inference or conclusion can be drawn."  *Peters*, 804 N.E.2d at 743.

Indiana law now recognizes that the supplier of chattel has a duty to inspect for defects that may harm people who use the

7

chattel.[1]  *See* ***McGlothlin v. M&U Trucking, Inc.***, 688 N.E.2d 1243, 1245 (Ind. 1997). *See also Restatement (Second) of Torts* ß 392 cmt. a (1965). In ***McGlothlin***, the Indiana Supreme Court overturned prior state court precedent in which the presence of legal duty hinged upon whether the defect was "latent" or "patent." ***See*** 688 N.E.2d at 1245.  *See also* ***Bloemker v. Detroit Diesel Corp. (Bloemker II)***, 687 N.E.2d 358, 359 (Ind. 1997). Rejecting the latent/patent distinction, the court instead adopted two of the supplier liability provisions in the *Restatement (Second) of Torts*, including ß 392, on which the plaintiffs rely. *See* 688 N.E.2d at 1245. This section provides:

> One who supplies to another, directly or through a third person, a chattel to be used for the supplier's business purposes is subject to liability to those for whose use the chattel is supplied, or to those whom he should expect to be endangered by its probable use, for physical harm caused by the use of the chattel in the manner for which and by persons for whose use the chattel is supplied
>
> > (a) if the supplier fails to exercise reasonable care to make the chattel safe for the use for which it is supplied, or
> >
> > (b) if he fails to exercise reasonable care to discover its dangerous condition or character, and to inform those whom he should expect to use it.
>
> *Restatement (Second) of Torts* ß 392 (1965)

---

[1] For the first time in its reply brief, Union Pacific argues that it is not a "supplier" under the *Restatement (Second) of Torts*. This argument is waived as untimely. *See* **River v. Commercial Life Insurance Company**, 160 F.3d 1164, 1173 (7th Cir. 1998). Regardless, resolution of Union Pacific's status is not critical to the disposition of this case.

However, the court noted that "inquiry into the reasonable discoverability of a defect may be proper in evaluating whether a supplier has breached the duty of reasonable care. . . ." *McGlothlin*, 688 N.E.2d at 1245.  *See also* ***Bloemker v. Detroit Diesel Corp. (Bloemker I)***, 655 N.E.2d 117, 123 (Ind. App. 1995), *vacated in part following* *McGlothlin*, 687 N.E.2d 358 (Ind. 1997). In so concluding, the *McGlothlin* court approved of the analysis in *Bloemker I* to the extent which the Indiana Court of Appeals had observed that "[t]he nature of the defect becomes relevant only when determining whether the duty to inspect was breached." *See* 688 N.E.2d at 1243. Under *Bloemker I*, "[w]here a latent defect exists, there would be no breach for failing to discover the defect so long as a reasonable inspection was performed." *See* *McGlothlin*, 688 N.E.2d at 1243 (*quoting* *Bloemker I*, 655 N.E.2d at 123).

Under *McGlothlin* and *Bloemker I*, Union Pacific had a duty to inspect, which it probably breached by failing to provide any inspection prior to supplying the boxcar to National Steel.  *See Restatement (Second) of Torts* § 392 cmt. a ("A person so supplying goods is required . . . to subject the article to such an inspection as the danger of using it in a defective condition makes it reasonable to require of him.").  However, the plaintiffs have failed to establish negligence because no reasonable juror could find that any breach of the duty to inspect proximately caused Downey's injury because the injury was not foreseeable.

9

Proximate cause is defined as "that which, in natural and continuous sequence, unbroken by any intervening cause, produces the result complained of and without which the result would not have occurred." See *Hassan v. Begley*, 836 N.E.2d 303, 307 (Ind. App. 2005) (quotation omitted).  Thus, "[a] party's act is the proximate cause of an injury if it is the natural and probable consequence of the act and should have been reasonably foreseen and anticipated in light of the circumstances." *Hassan*, 836 N.E.2d at 307.  See also *Mayfield*, 833 N.E.2d at 506.  Foreseeability in the context of proximate cause "is determined based on hindsight, and accounts for the circumstances that actually occurred." *Goldsberry v. Grubbs*, 672 N.E.2d 475, 479 (Ind. App. 1997). Foreseeability "imposes the same limitations upon liability as does the superceding or intervening cause doctrine," and the analysis essentially is the same. See *Lane v. St. Joseph's Regional Medical Center*, 817 N.E.2d 266, 274 (Ind. App. 2004).

The evidence in this case shows that prior to Downey injuring her foot, she and Foldenauer conducted a visual inspection of the bulkhead rails and moved both bulkheads to ensure that they functioned properly. Neither bulkhead exhibited any problems at that point.  In addition, Downey moved both bulkheads across 3/4 of the car without incident, in order for the south end to be loaded. Only after the bulkhead had passed an inspection and had been moved at least twice did the bulkhead become caught. Negligence may not be inferred simply from the fact that an accident

10

occurred.  *See* **Pelak v. Indiana Industrial Services, Inc.**, 831 N.E.2d 765, 769 (Ind. App. 2005).

Although an accident report attributed Downey's injury to defective equipment, this subsequently made statement does not create a genuine issue of material fact.  No jury reasonably could find that Union Pacific knew or should have known of an alleged defect in a piece of equipment that both passed inspection by the plaintiff and that the plaintiff operated multiple times immediately prior to the accident without incident until it became stuck for unknown reasons.  *See* **Deans v. CSX Transportation, Inc.**, 152 F.3d 326, 330 (7th Cir. 1998); **Williams v. National Railroad Passenger Corporation**, 161 F.3d 1059, 1063 (7th Cir. 1998).  Consequently, summary judgment must be granted in this case.

_____

For the foregoing reasons, the Motion for Summary Judgment filed by the defendant, Union Pacific Railroad, on September 29, 2005 is **GRANTED**.

ENTERED this 30th day of January, 2006

　　　　　　　　　　　　　　　　s/ ANDREW P. RODOVICH
　　　　　　　　　　　　　　　　   United States Magistrate Judge